UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        Criminal Case No. 17-20724
                                         Civil Case No.19-11024

REGGIE L. JACKSON,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE AND DENYING
CERTIFICATE OF APPEALABILITY**

**I. INTRODUCTION**

In 2018, Defendant Reggie Jackson pleaded guilty to possession of 15 or more counterfeit or unauthorized access devices, 18 U.S.C. § 1029(a)(3), aggravated identity theft, 18 U.S.C. § 1028(a)(1), and three counts of wire fraud, 18 U.S.C. §1343. He was sentenced to 102 months imprisonment. (ECF No. 37.) Pending before the court is Defendant's motion to vacate his sentence under 28 U.S.C. § 2255. For the reasons stated herein, Defendant's motion will be denied, and the court will decline to issue a certificate of appealability.

**II. BACKGROUND**

Between August 2015 and May 2017, Defendant orchestrated a multi-layered mail takeover scheme. (ECF No. 33, PageID.98.) He obtained personal information from over 1,100 victims, redirected their mail to addresses he controlled, then opened


credit cards in their names, or obtained cellular phones to resell. (*Id.* at PageID.98–99.) In total, Defendant submitted false change of address forms for roughly 70 victims. (*Id.* at PageID.99.)

On May 12, 2017, the U.S. Postal Inspection Service executed a search warrant at Defendant's residence and found approximately 50 fraudulent credit cards and 47 counterfeit driver's licenses. Defendant told inspectors there was no reason to "beat around the bush" as he was caught "red-handed." (*Id.*) He then directed inspectors to a box containing several notebooks filled with names, addresses, and social security numbers for over 800 more victims. Defendant claimed that he acted alone, but a search of his cellular phone revealed that other individuals had texted him the names, dates of birth, and social security numbers of some of his victims. His cellular phone also contained personally identifying information for hundreds more victims, including patient records from Camelot Hall Convalescent Center and Sheffield Manor Nursing & Rehabilitation Center.

Defendant pleaded guilty. The plea agreement contained a sentencing guidelines calculation range of 102-121 months, which included various sentencing enhancements. (*Id.* at PageID.100–01, 107.) The plea agreement also contained an appeal waiver. (*Id.* at PageID.104.) The court ultimately sentenced Defendant to 102 months' imprisonment. (ECF No. 37, PageID.140.) Defendant did not appeal his sentence to the Sixth Circuit but now challenges certain sentencing enhancements in the instant motion.

### III. STANDARD

Under § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). As "[§] 2255 is not a substitute for a direct appeal," *Regaldo v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief. *Frady,* 456 U.S. at 166. Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the defendant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993)). Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a defendant can prevail on a § 2255 motion alleging non-constitutional error "establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson,* 165 F.3d at 488 (quoting *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir. 1990)).

## IV. DISCUSSION

Defendant's motion to vacate contains four challenges to the various enhancements that applied at sentencing and three claims relating to the alleged ineffectiveness of his legal representation. The court will address each claim in turn.

### A. Guideline Challenge Claims

Defendant challenges his guidelines enhancements for obstruction of justice, use of sophisticated means, and production of counterfeit access devices. (ECF No. 39, PageID.152, 154, 156, 159.) Defendant argues that his sentence range should have been between 65–75 months. (ECF No. 45, PageID.205.) The Government argues that Defendant procedurally defaulted on his various attacks to his sentencing enhancements. (ECF No. 43, PageID.175.) In the alternative, the Government asserts that Defendant's claims are not cognizable on collateral review. (*Id.* at PageID.176–77.)

**1. Procedural Default**

The Government argues that Defendant procedurally defaulted on his challenges to the sentencing enhancements by failing to raise those arguments on direct appeal. (ECF No. 43, PageID.176.) Defendant responds that he agreed to plead guilty and to accept the guideline enhancements on the advice of his attorney. (ECF No. 45, PageID. 202.)

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Habeas defendants must show cause and actual prejudice to overcome the bar of procedural default that applies when they fail to pursue a claim on direct appeal. *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015). Cause is shown when

4

"some objective factor external to the defense" such as the development of new law, prevented the defendant from raising the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Prejudice requires that the alleged error worked to the defendant's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Alternatively, a defendant can overcome procedural default by proving he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Here, Defendant makes no claim of actual innocence.

As part of his plea agreement, Defendant signed an appeal waiver in which he waived "any right" to appeal his sentence "on any grounds" if sentenced to fewer than 121 months. (ECF No. 33, PageID.104.) In fact, the court sentenced Defendant to 102 months' incarceration, activating Defendant's waiver of the right to challenge the calculation of his sentencing guidelines. Courts have routinely held that appeal waivers are insufficient to demonstrate cause and overcome procedural default. *See United States v. Williams*, No. 16-cr-20078, 2018 WL 7635136, at *4 (E.D. Mich. Nov. 13, 2018) (Patti, M.J.) (collecting cases). Accordingly, the court concludes that Defendant procedurally defaulted on his enhancement challenges and that he has failed to demonstrate cause, let alone prejudice, necessary to pursue such claims on collateral review.

**2. Cognizability of Enhancement Challenges**

Even if Defendant had not procedurally defaulted his claims, his enhancement challenges are not cognizable under § 2255. Claims that do not assert a constitutional or jurisdictional challenge are generally not cognizable on collateral review unless they

involve a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). This is a high standard met only under "exceptional circumstances" *Hill v. United States*, 368 U.S. 424, 428 (1962) and necessarily means that not "every asserted error of law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346. Guideline calculation challenges do not meet this high standard. *See, e.g., Bullard v. United States*, 937 F.3d 654, 658–59 (6th Cir. 2019); *Snider v. United States*, 908 F.3d 183, 189–91 (6th Cir. 2018); *Johnson v. United States*, No. 19-2203, 2020 U.S. App. LEXIS 9106, at *4 (6th Cir. Mar. 23, 2020).

Defendant's guideline claims do not have a constitutional component; he simply challenges the factual predicates for the enhancements to which he agreed when he pleaded guilty. Accordingly, Defendant's enhancement claims are not cognizable on collateral review and will be denied.[1]

### B. Ineffective Assistance of Counsel Claims

Defendant claims his counsel was deficient based on counsel's failure to file motions or briefs, his performance during sentencing, and his failure to challenge Defendant's enhancements. (ECF. No. 39, PageID.160.) The Government responds that none of the arguments advanced by Defendant demonstrate that his attorney provided ineffective assistance.

To establish ineffective assistance of counsel under the Sixth Amendment, Defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must first show that his counsel's performance was

---

[1] For the reasons explained in the next section, Defendant's guidelines challenges may also be denied because they are meritless. *See infra* Part IV.B.3.

deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Courts must afford defense attorneys "wide latitude" in making tactical decisions and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Defense counsel is entitled to a "strong presumption" that he made "all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).

If a defendant succeeds in proving deficient performance, he must next show that the deficient performance resulted in actual prejudice. Prejudice requires more than "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693–94. Rather, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* None of the counsel's alleged errors in the instant matter constitute deficient performance.

**1. Failure to File Unspecified Motions**

Defendant claims his counsel's performance was deficient because counsel failed to file motions on his behalf. (ECF No. 39, PageID.160.) Defendant argues the only motion his attorney filed was to remove himself as the "paid attorney" and be replaced as Defendant's "public defender" so that he could be paid twice. (ECF No. 39, PageID.160.) Defendant claims after this court denied that motion, counsel put forth "no effort" into his defense. (*Id.*)

Defendants must specify their requested grounds for relief and the specific facts to support those grounds. Rules Governing § 2255 Proceedings, Rule 2. Defendant fails to state what motions he believes his attorney should have filed. Such general allegations, devoid of any factual detail or analysis, are insufficient to establish deficient attorney performance. *United States v. Cosgrove*, 637 F.3d 646, 663 (6th Cir. 2011) ("[C]onclusory assertions of ineffective assistance are not adequate.").

To succeed on an ineffective assistance of counsel claim, Defendant must demonstrate that counsel committed specific errors of a constitutional dimension; general assertions that counsel could have done "more" or that his attorney performed poorly do not warrant habeas relief. *See Storey v. Vasbinder*, 657 F.3d 372, 374 (6th Cir. 2011) ("[I]n order to obtain a new trial on ineffective-assistance grounds, the petitioner must do more than show that he had a bad lawyer—even a really bad one."). Defense counsel has no obligation to file frivolous motions, and counsel does not provide ineffective assistance when he declines to do so. *United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986).

At Defendant's sentencing hearing, his attorney argued that Defendant's "position from the beginning [was] to not file motions and to accept responsibility." (ECF No. 46, PageID.214.) Defendant does not demonstrate how this strategy amounted to deficient attorney performance, nor does he specify what motions his attorney should have filed. The record shows Defendant hoped that the Government would move for a downward departure on his sentence under U.S. Sentencing Guidelines Manual § 5K1.1 ("5K"), but that such a motion was not filed because, as Defendant's attorney stated, Defendant "didn't know enough bad guys to get that 5K." (ECF No. 46,

PageID.214.) However, "the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010).

Unsatisfied with the sentence ultimately imposed, Defendant cannot now claim that his attorney rendered deficient performance by failing to file unspecified motions. A defendant who makes no particularized showing of what additional motions could have been filed fails to satisfy his burden of proving either deficient attorney performance or prejudice. Nor can Defendant establish that counsel's strategy to "accept responsibility" was not an "objectively reasonable" trial strategy under the circumstances of the case. *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *see also Summers v. Warden Chillicothe Corr. Inst.*, No. 17-3487, 2018 WL 2166198, at *3 (6th Cir. Feb. 20, 2018) (denying a certificate of appealability where the district court concluded that counsel's strategy of accepting responsibility did not constitute deficient attorney performance); (ECF No. 46, PageID.214.)

**2. Counsel's Performance at Sentencing**

Next, Defendant claims his counsel's performance at sentencing was deficient because "no briefs were addressed prior to sentencing, [and] no arguments addressed at sentencing." (ECF No. 39, PageID.160.) Defendant claims his counsel led him to believe "there was no need to object nor file anything because that only makes Judge Cleland and Prosecutors mad." (ECF No. 39, PageID.160.) The record of this case proves otherwise and demonstrates that counsel did, in fact, advance several arguments in a sentencing memorandum and at Defendant's sentencing hearing.

In his sentencing memorandum, counsel challenged Defendant's loss

9

calculation. Specifically, counsel argued the loss calculated of over $550,000 by using 1,100 cards was incorrect because few of the cards were activated or utilized, meaning that the actual loss amount was a fraction of the calculated total. (ECF No. 35, PageID.131.) This is the exact argument Defendant now asserts that his attorney *should* have advanced at sentencing. (ECF No. 39, PageID.159.) Additionally, counsel requested a variance based in part on the loss calculation and in part on Defendant's compliance with the terms of his pre-trial release and personal characteristics. (ECF No. 35, PageID.132–33.)

Defendant's attorney put forth similar arguments at the sentencing hearing. Defendant's attorney again challenged the $500 loss multiplier and presented mitigating factors in support of a variance. (ECF No. 46, PageID.214–216.) At no time during the sentencing hearing did Defendant take issue with the arguments advanced by his attorney. That the court rejected counsel's requested sentence does not mean counsel provided deficient performance. *See Ward*, 592 F.3d at 1164. Defendant's claim will be denied.

**3. Ineffective Assistance Related to Guideline Enhancements**

Finally, Defendant again challenges his enhancements by repackaging them as ineffective assistance of counsel claims. As the court previously explained, challenges to guideline errors by themselves are not cognizable on collateral view. *United States v. Snider*, F.3d 183, 189–92 (6th Cir. 2018). Nevertheless, the failure of counsel to object to an error in the pre-sentence report's calculation of the sentencing guidelines can give rise to a claim for ineffective assistance. *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014). Further, "a failure to investigate, participate in, and prepare for the

sentencing proceedings" establishes deficient performance. *Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999). Defendant points to no such errors in this case.

Defendant claims that the sophisticated means enhancement under U.S. Sentencing Guidelines Manual § 2B1.1(b)(10)(C) does not apply as his actions were not complex or intricate. The sentencing guidelines define sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* Courts look to the totality of the defendant's conduct, not the individual steps of the scheme, in determining whether the offense involved sophisticated means. *United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007). The enhancement can apply even if none of the parts of the scheme, standing alone, are particularly complex or intricate. *United States v. Mahmud*, 541 F. App'x 630, 636 (6th Cir. 2013).

The Government argues that Defendant's scheme was sophisticated and points to the case of *United States v. Vaughn*, 159 F. App'x 287 (2d Cir. 2005) in which the Second Circuit held that the enhancement applied to a defendant who did little more than possess false identification cards and equipment to make the cards. *Id.* at 288. In this case, the Government argues, Defendant's crimes were even more complex because he purchased stolen identifies off of the internet, created false identification cards with the stolen information, used those cards to open credit accounts in the victims' names, and relied on various addresses to conceal his activities. (ECF No. 43, PageID.184–85.) The Sixth Circuit has held that similar conduct justifies the enhancement. *See United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007)

(applying enhancement to defendant who filed false credit applications using information obtained from publicly available reference materials).

The facts of *Vaughn* and *Masters* are similar to the facts of this case and demonstrate that the enhancement was appropriate. Defendant participated in a multi-prong scheme to defraud his victims. Text messages on his phone indicate that he received the names, dates of birth, and social security numbers for "hundreds of additional victims" (ECF No. 33, PageID.100.) In total he amassed over 800 names, addresses, dates of birth, and social security numbers. Defendant purchased stolen identities from various sources with that information and used the stolen identities to create counterfeit driver's licenses with his photograph. He then used the fake identification cards to open credit card accounts and also used various addresses throughout Detroit to hide his involvement in the scheme. In total the Defendant possessed roughly 50 fraudulent credit cards and 47 fraudulent drivers' licenses. The court concludes that counsel did not err in failing to raise what would have been a frivolous challenge to the sophisticated means enhancement given these facts.

Next, Defendant appears to argue that his counsel's performance was deficient for failing to challenge the enhancement for the production of unauthorized or counterfeit access devices under U.S. Sentencing Guidelines Manual § 2B1.1(b)(11). Credit cards and gift cards in which the magnetic strip has been re-encoded with information from a stolen credit card account and driver's licenses all constitute "access devices." *See United States v. Bridges*, 739 F. App'x 323, 326–27 (6th Cir. 2018); *United States v. Jacobs*, 545 F. App'x 365, 367 (6th Cir. 2013). Defendant was found in possession of not only stolen identification information but also counterfeit credit cards

and driver's licenses with "altered" photographs. (ECF No. 33, PageID.99.) He also claimed that he worked alone. The application notes for the guidelines provide that this precise conduct justifies the enhancement. U.S. Sentencing Guidelines Manual § 2B1.1 ctm. n.10(C)(ii) ("A defendant obtains an individual's name and address from a source (e.g., from a driver's license in a stolen wallet) and applies for, obtains, and subsequently uses a credit card in that individual's name. In this example, the credit card is the other means of identification that has been obtained unlawfully."). Based on these facts, counsel was not ineffective for failing to challenge the production enhancement, particularly given counsel's stated strategy of accepting responsibility. *Miller*, 269 F.3d at 616 (6th Cir. 2001); *see also Summers*, No. 17-3487, 2018 WL 2166198, at *8 (denying a certificate of appealability where the district court concluded that counsel's strategy of accepting responsibility did not constitute deficient attorney performance).

Defendant also seems to imply that the production enhancement should not apply to him because someone else created the counterfeit devices. (ECF No. 45, PageID.203–24.) But Defendant need not have personally created the accesses devices for the enhancement to apply; the enhancement still applies if the offense involved the production of access devices. The guidelines define "offense" as "the offense of conviction and all relevant conduct." U.S. Sentencing Guidelines Manual §1B1.1 cmt. n.1(I). The term "relevant conduct" is defined as "all acts and omission committed . . . induced, procured, or willfully caused by the defendant." *Id*. at §1B1.3(a)(1)(A). Assuming, *arguendo*, that Defendant did not physically produce the access devices, he still obtained the information used to create the access devices,

provided that information to a third-party who made the device, and then used the fraudulent access devices as part of his scheme. The enhancement applies under these circumstances because, at a minimum, Defendant "procured or willfully caused" the production of the access devices. *See also United States v. Taylor*, 818 F.3d 671, 678 (11th Cir. 2016) (rejecting defendant's argument that first-hand involvement in the production of access devices is necessary for the enhancement to apply).

Defendant's final argument is difficult to decipher, but it appears that Defendant intends to challenge his attorney's performance related to the calculation of his loss amount. (ECF No. 39, PageID. 160.) The guidelines require the court to make only a "reasonable estimate of the loss." U.S. Sentencing Guidelines Manual §2B1.1 cmt. n.3(C). In cases involving unauthorized access devices, the guidelines allow the court to assess a loss of $500 for each access device. *Id.* at § 2B1.1 cmt. n.3(F)(i). The Sixth Circuit has repeatedly affirmed this method for calculating the loss amount based on an estimate of no less than $500 per access device. *See United States v. Moon*, 808 F.3d 1085, 1090–91 (6th Cir. 2016); *United States v. Beuns*, 614 F. App'x 284, 287–88 (6th Cir. 2015); *United States v. Shifu Lin*, 508 F. App'x 398, 403–04 (6th Cir. 2012); *United States v. Lyles*, 506 F. App'x 440, 444–45 (6th Cir. 2012); *United States v. Gilmore*, 431 F. App'x 428, 430–31 (6th Cir. 2011). There is no requirement to prove that each account was useable. *Moon*, 808 F.3d at 1092.

The $500 multiplier used to calculate Defendant's loss amount was appropriate, and Defendant therefore identifies no issue with his attorney's performance in that regard. The notebook found in Defendant's apartment contained over 800 victims' names, with addresses, dates of birth, and social security numbers, and his phone

14

contained patient records, social security numbers, and dates of birth for hundreds more. (ECF No. 33, PageID.100.) With this information, Defendant obtained roughly 50 fraudulent credit cards and 47 fraudulent drivers' licenses. Defendant possessed unique identification information for over 1,100 victims resulting in a loss estimate of over $550,000 when using the $500 multiplier. (ECF No. 43, PageID.191.) The Government need not prove the usability of each account. Thus, counsel was not ineffective by failing to challenge this method of calculation. *McQueen v. Scroggy*, 99 F.3d 1302, 1328 1996 (6th Cir. 1996) ("[I]t is not ineffective assistance to fail to raise erroneous claims.").

None of Defendant's arguments demonstrate that his attorney rendered constitutionally deficient performance. Defendant's motion to vacate will be denied.

## V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In this case, the court concludes that reasonable jurists would not debate the court's ruling. Therefore, the court will deny a certificate of appealability.

## VI. CONCLUSION

For the reasons explained above, Defendant has not articulated any legitimate

claim for habeas relief. His challenges to certain guideline enhancements are procedurally defaulted, not cognizable on collateral review, and factually meritless. His claims for ineffective assistance of counsel related to these enhancements and other non-errors similarly fail. Accordingly,

IT IS ORDERED that Defendant's motion to vacate (ECF No. 39) is DENIED.

IT IS FURTHER ORDERED and a Certificate of Appealability is DENIED.

                                s/Robert H. Cleland        /
                                ROBERT H. CLELAND
                                UNITED STATES DISTRICT JUDGE

Dated: April 24, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2020, by electronic and/or ordinary mail.

                                s/Lisa Wagner           /
                                Case Manager and Deputy Clerk
                                (810) 292-6522

S:\Cleland\Cleland\HEK\Habeas\17-20724.JACKSON.2255.HEK.RHC.docx